UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION


NICHOLAS GUEDRY, #443348

          Plaintiff,                    CIVIL ACTION NO. 09-11522

         v.                        DISTRICT JUDGE MARIANNE O. BATTANI

DAN RIOPELLE, JOHN DOE         MAGISTRATE JUDGE MARK A. RANDON
Nurse, JANE DOE Nurse, and
JOHN DOE Officer,

          Defendants.
_____/

## REPORT AND RECOMMENDATION ON DEFENDANT
## RIOPELLE'S MOTION TO DISMISS

      Plaintiff, an inmate in the custody of the Michigan Department of Corrections

("MDOC"), filed this action under 42 U.S.C. § 1983, alleging that multiple defendants violated

his constitutional rights.  Presently before the court is the motion to dismiss (Dkt. No. 10) of

Defendant Dan Riopelle ("Riopelle").  The motion contends that Plaintiff failed to properly

exhaust his administrative remedies, because his prison grievance neglected to name Riopelle or

allege any wrongdoing against him.  For the reasons discussed below, it is recommended that the

motion to dismiss be GRANTED.

- 1 -

**DISCUSSION**

**A.      Background**

**1.      Plaintiff's Complaint**

Plaintiff, Nicholas Guedry, is currently incarcerated at the Bellamy Creek Correctional

Facility in Ionia, Michigan.  His complaint alleges that while working on an MDOC farm,

Riopelle, the Farm Supervisor, permitted Plaintiff to work in conditions that exposed him to a

"dangerous infection of ringworm" (Dkt. No. 1).  Plaintiff claims he was infected due to a lack

of "proper safety equipment" and a "proper place to wash up," and that his repeated requests for

medical treatment were largely ignored and ultimately misdiagnosed by prison staff.  (*Id.*)  As a

result, he seeks an award of money damages against Riopelle, two unidentified nurses, and an

unidentified prison officer for violation of his Eighth Amendment rights.

**2.      The MDOC's Grievance Procedure**

The MDOC provides prisoners with a method of seeking redress for alleged violations of

policy and procedure or unsatisfactory conditions of confinement.  The grievance procedure and

applicable rules are set forth in MDOC Policy Directive 03.02.130 ("the Policy") (Dkt. No. 10,

Ex. A).  The Policy was last updated on March 5, 2007, and became effective for all grievances,

including Plaintiff's, filed after July 9, 2007.

The Policy outlines a three-step written grievance procedure. Prior to filing a grievance at

Step I, a prisoner is generally required to seek an informal resolution of the issue with the staff

member involved.  A prisoner may file a grievance at the next step if he is dissatisfied with the

response received at the previous step, or if a timely response is not received.

- 2 -

With respect to what should be included in a grievance, the Policy requires, in part, that:

> R.     A grievant shall use the Prisoner/Parolee Grievance (CSJ-247A) to file a step I grievance; a Prisoner/Parolee Grievance Appeal (CSJ 247B) shall be used to file a step II or step III grievance. The forms may be completed by hand or by typewriter; however, handwriting must be legible. The issues should be stated briefly and concisely. *Information provided is to be limited to the facts involving the issue being grieved (i.e., who, what, when, where, why, how). Dates, times, places, and names of all those involved in the issue being grieved are to be included*. (Emphasis added).

Therefore, including the names and conduct of every individual involved in the issue being grieved is required to file a complete grievance.

### 3.     Plaintiff's Grievance

On July 31, 2007, Plaintiff filed Grievance MBP 0708157412D1 ("the Grievance"). At Step I, the Grievance, in its entirety, read as follows:

> I contacted MBP Medical Health Care "urgent care" multiple times. They refused to treat my conditions resulting scarring on my face, neck, chin, arm, & hands. I was transferred to JCS in critical condition and was immediately (sp) taken to Duane Waters Hospital. The result of MBP healthcare neglect, I am now permently (sp) scarred.  To resolve this issue I would like to be assured MDOC acknowledges that their neglect which caused severe scarring throughout my face, neck, chin & arms. It also covers all costs to treat the scarred areas after discharge. In the alternative, there is no undoing the neglect. I seek punitive damages in the amount no less than $100,000.

Plaintiff pursued the Grievance through Step III.  However, like Step I, the Grievance at Steps II and III failed to name or describe Riopelle, by position or otherwise, and made no allegations about a lack of safety equipment or a proper place to wash up.  Instead, the Grievance focused on

the lack of timely medical treatment for Plaintiff's infection.  Other than the Grievance, no other administrative procedures were initiated regarding the allegations in Plaintiff's Complaint (Dkt. No. 10, Ex. B and Dkt. No. 11).

**B.      Standard of Review**

A complaint fails to state a claim upon which relief can be granted when it is clear that no relief could be granted under any set of facts that could be proved consistent with the allegations of the complaint.  *Jones v. City of Carlisle,* 3 F.3d 945, 947 (6th Cir. 1993).  To state a claim under 42 U.S.C. § 1983, a plaintiff must allege the violation of a right secured by the federal Constitution or laws and must show that the deprivation was committed by a person acting under color of state law.  *West v. Atkins,* 487 U.S. 42, 48 (1988); *Street v. Corr. Corp. of Am.,* 102 F.3d 810, 814 (6th Cir. 1996).  Because § 1983 is a method for vindicating federal rights, not a source of substantive rights itself, the first step in an action under § 1983 is to identify the specific constitutional right allegedly infringed.  *Albright v. Oliver,* 510 U.S. 266 (1994).

**C.      The Prison Litigation Reform Act**

Under the Prisoner Litigation Reform Act ("PLRA"), a prison inmate cannot bring a civil rights action challenging prison conditions until "such administrative remedies as are available are exhausted." 42 U. S. C. § 1997e(a).  Specifically, a prisoner must follow the state corrections system's grievance procedure and properly exhaust all administrative remedies before filing an action in federal court.  *Woodford v. Ngo*, 548 U.S. 81, 88 (2006).  Proper exhaustion includes  "compliance with an agency's deadlines and other critical procedural rules." *Id.* at

90.  As *Woodford* Court explained, the benefits of exhaustion are unattainable if prisoners ignore the rules:

> First, exhaustion protects "administrative agency authority." (Citation omitted).  Exhaustion gives an agency "an opportunity to correct its own mistakes with respect to the programs it administers before it is haled into federal court," and it discourages "disregard of [the agency's] procedures." (Citation omitted)
>                               * * *
> The benefits of exhaustion can be realized only if the prison grievance system is given a fair opportunity to consider the grievance. The prison grievance system will not have such an opportunity unless the grievant complies with the systems critical procedural rules.  A prisoner who does not want to participate in the prison grievance system will have little incentive to comply with the system's procedural rules unless noncompliance carries a sanction.

*Id*. at 89, 95.  Therefore, an incomplete or otherwise improper grievance, though appealed through all steps of a grievance procedure, does not fulfill the PLRA exhaustion requirement.  In *Jones v. Bock*, 549 U.S. 199 (2007), the Supreme Court overturned the Sixth Circuit's total exhaustion rule and its requirement that prisoners specifically plead exhaustion in their complaints. However, like the instant motion, failure to exhaust may still be raised as an affirmative defense.

### 1.      Plaintiff's Failure to Name Riopelle was a Violation of the Policy

Although Plaintiff timely filed and pursued the Grievance through Step III, he did  not name or allege any wrongdoing against Riopelle.  Plaintiff acknowledges these omissions but argues that filing a separate grievance against Riopelle would have been "duplicative" of  "issues

already raised" in violation of section the Policy §G (Dkt. No.14). He further contends that Riopelle's motion is simply a "frivolous" delay tactic.

Plaintiff's arguments miss a key point. His Grievance was incomplete. The Policy required Plaintiff to include the "names of all those involved" in the Grievance (the Policy, §R). Had he done so, it would be unnecessary for him to file a separate grievance naming Riopelle, and more importantly, the MDOC would have been afforded an opportunity to address any claims against Riopelle before being sued in court. *Woodford*, 548 U.S. at 89. Accordingly, Plaintiff's failure to raise these claims administratively bars his suit against Riopelle. 42 U. S. C. § 1997e(a).

Finally, it should be noted that in *Jones*, the Supreme Court held that the PLRA does not require a prisoner to name all potential defendants in his grievances. *Jones*, 549 U.S. at 217. Instead, "it is the prison's requirements, and not the PLRA, that define the boundaries of proper exhaustion." *Id*. at 218. However, *Jones* was based on a previous version of the Policy that did not require prisoners to name all persons involved in their grievances as it did at all times relevant to the Grievance. The present Policy clearly states that "[d]ates, times, places and names of all those involved in the issue being grieved are to be included."

## RECOMMENDATION

For the reasons stated above, it is RECOMMENDED that the Defendant Riopelle's Motion to Dismiss (Dkt. No. 10) be GRANTED.

The parties to this action may object to and seek review of this Report and Recommendation, but are required to act within ten (10) days of service of a copy hereof as provided for in 28 U.S.C. § 636(b)(1) and E.D. Mich. LR 72.1(d)(2). Failure to file specific

- 6 -

objections constitutes a waiver of any further right of appeal. *Thomas v. Arn*, 474 U.S. 140 (1985); *Howard v. Secretary of HHS*, 932 F.2d 505, 508 (6th Cir. 1991); *United States v. Walters*, 638 F.2d 947, 949-50 (6th Cir. 1981). The filing of objections which raise some issues, but fail to raise others with specificity, will not preserve all the objections a party might have to this Report and Recommendation. *Willis v. Secretary of HHS*, 931 F.2d 390, 401 (6th Cir. 1991); *Smith v. Detroit Fed'n of Teachers Local 231*, 829 F.2d 1370, 1373 (6th Cir. 1987). Pursuant to E.D. Mich. LR 72.1(d)(2), a copy of any objections is to be served upon this magistrate judge.

Within ten (10) days of service of any objecting party's timely filed objections, the opposing party may file a response. The response shall be no more than 20 pages in length unless, by motion and order, the page limit is extended by the court. The response shall address each issue contained within the objections specifically and in the same order raised.


 s/Mark A. Randon
MARK A. RANDON
UNITED STATES MAGISTRATE JUDGE

Dated: August 18, 2009

<u>Certificate of Service</u>

I hereby certify that a copy of the foregoing document was mailed to the parties of record on this date, August 18, 2009, by electronic and/or ordinary mail.


 s/Melody R. Miles
Case Manager to Magistrate Judge Mark A. Randon

- 7 -